IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN HESSE,                         )
                                      )
            Plaintiff,                )
                                      )
vs.                                   )     Case No. 13-cv-301-CJP[1]
                                      )
CAROLYN W. COLVIN,                    )
Acting Commissioner of Social         )
Security,                             )
                                      )
            Defendant.                )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Steven Hesse, represented by counsel, seeks judicial review of the final agency decision denying him Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

After having been previously denied disability benefits, Mr. Hesse applied for SSI in August, 2009, alleging disability beginning on March 30, 2002.   ALJ William L. Hafer denied the claim on November 29, 2011, after holding an evidentiary hearing.   (Tr. 123-130).   The Appeals Council remanded.   ALJ Hafer held another evidentiary hearing and denied the application for benefits in a decision dated August 3, 2012.   (Tr. 27-39).   The Appeals Council denied review, and the

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c).   See, Doc. 24.

August 3, 2012, decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

### Issues Raised by Plaintiff

Plaintiff raises the following points:

1.   The ALJ mistakenly found that plaintiff had no treatment after January, 2011.

2.   The ALJ erred in giving significant weight to an examining doctor's report after referring to it as "boilerplate" at the hearing.

3.   The ALJ ignored the diagnoses of failed back syndrome and sciatica.

4.   The ALJ ignored counsel's request for a consultative orthopedic exam.

5.   The ALJ improperly analyzed plaintiff's activities.

### Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[2]   For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42**

---

[2]   The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.   For all intents and purposes relevant to this case, the DIB and SSI statutes are identical.   Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.   Most citations herein are to the DIB regulations out of convenience.

**U.S.C. §423(d)(1)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §423(d)(3).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination

of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   **20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.   ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).   *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001**) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**.   Thus, this Court must determine not whether Mr. Hesse was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   **See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)**).   This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997)**.   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

## The Decision of the ALJ

ALJ Hafer followed the five-step analytical framework described above.   He determined that Mr. Hesse had not been engaged in substantial gainful activity since the date of the application.   He found that plaintiff had severe impairments of degenerative disc disease of the lumbar spine and status post fracture of the right arm radius.   He further determined that these impairments do not meet or equal a

listed impairment.

The ALJ found that Mr. Hesse had the residual functional capacity (RFC) to perform work at the light exertional level, with some limitations.   Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do his past work as an ironworker.   However, he was able to do other jobs which exist in significant numbers in the regional and local economies.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff.

### 1.   Prior Decision

Mr. Hesse previously applied for Disability Insurance Benefits (DIB) and SSI in August, 2005. alleging disability beginning on March 1, 2002.   On August 7, 2008, ALJ Sally Reason denied his applications.   She noted that he was insured for DIB only through December 31, 2006.   (Tr. 100-110).   Mr. Hesse sought judicial review of that decision, and this Court affirmed.   See, *Hesse v. Commissioner*, Case No. 09-496-CJP, Doc. 27.   Mr. Hesse did not appeal.   His current application was filed about a year after ALJ Reason's decision.

### 2.   Agency Forms

Plaintiff was born in 1959.   He was 43 years old on the date he initially alleged as the onset date, March 30, 2002.   He was 50 years old on the date he filed

his current SSI application.   (Tr. 315).

Plaintiff said he was unable to work because of chronic severe low back pain and a steel rod in his right arm.   He stopped working on March 30, 2002 because of a low back injury.   (Tr. 319).   He had been an ironworker.   (Tr. 320).

In his initial Function Report, Mr. Hesse stated that he lived with his girlfriend and her two children.   His girlfriend prepared meals because he could not stand at the stove long enough to make a meal.   He had no difficulties with personal care.   He did light chores such as washing a few dishes.   He did not do housework or yard work because he could not bend, stand or walk for any length of time.   He watched TV and collected pocketknives.   He could walk for only one block.   (Tr. 318-333).

After his application was initially denied, plaintiff filed another Function Report in March, 2010.   He indicated that he had difficulties with personal care. For instance, he had difficulty putting on his pants due to pain.   He did no house or yard work.   He went outside only 3 times a month.   He went to Wal-Mart with his girlfriend once a month, and sat on a bench while she shopped.   He had poor concentration due to pain.   (Tr. 342-349).

**3.    Evidentiary Hearings**

Mr. Hesse was represented by an attorney at both evidentiary hearings.   (Tr. 47, 80).

The first hearing was on August 1, 2011.   In view of the denial of the prior application, the onset date was amended to August 25, 2009, the date on which the

Page **7** of **18**

current SSI application was filed.   (Tr. 82).

Mr. Hesse explained that his Ironworkers pension would be doubled if his application for social security benefits were granted.   (Tr. 84).

Plaintiff testified that he had pain in his low back, left hip and down his left leg.   He also had pain in his right arm.   He had fractured his arm in the past and it was repaired with 2 rods.   He had 4 surgeries on his back. The last one was in 2001.   (Tr. 86-87).

He could sit for 1 hour and be on his feet for 1 hour.   He did not have any difficulty lifting, but he did have trouble twisting his right wrist.   (Tr. 88).

He took morphine, Demerol, muscle relaxers and Xanax.   Demerol made him "a little drowsy."   (Tr. 89).

He felt he could not work at any job because he "deal[t] with a lot of pain" and a lot of companies would not hire someone who took medications like he took. (Tr. 90).

A vocational expert (VE) testified that Mr. Hesse's past work was skilled and was performed at the heavy exertional level.   The skills were not transferable to sedentary or light work.   (Tr. 95).

At the second hearing, plaintiff's attorney argued that Dr. Davidson's opinion should be given controlling weight.   The ALJ and counsel had a discussion regarding the report of Dr. Feinerman's consultative examination.   Counsel described the report as "the standard boilerplate that Dr. Feinerman poses that is no [sic] consistent with the rest of the medical evidence."   (Tr. 50-51).   After

counsel made a few more remarks (not concerning Dr. Feinerman), the following

exchange occurred:

ALJ:        Based on the SSI claim, I also agree with you about your
            comment regarding our friend, Dr. Finerman.   [sic].   Could
            go into more detail but [INAUDIBLE].

Counsel:    Yes, sir.

ALJ:        [INAUDIBLE].

Counsel:    I know a lot about him.

ALJ:        I'll just leave that be.

Tr. 51-52.

Mr. Hesse testified that he was living with an elderly man who was a friend

of his family.   He cooked for this man, but did not do anything else.   (Tr. 54-55).

He testified that he was able to stand for 1 hour, walk for 4 or 5 blocks and lift a

gallon of milk.   He could not reach overhead with his right arm.   (Tr. 55).

The ALJ asked plaintiff if he "had any medical treatment since – spring of

2011?"   Plaintiff said, "No, sir."   The ALJ then asked, "Okay, you haven't seen

doctors, don't go to see Dr. Davidson anymore?"   Mr. Hesse replied, "Oh, yeah,

yeah, I still see Dr. Davidson."   (Tr. 56).   Counsel later said, "his more recent

treatment with Dr. Davidson has more been just follow up, it's kind of an it is what

it is type of thing, it's …"   (Tr. 58).

A VE testified.   The ALJ asked the VE to assume a person over the age of 50

who could do light work, limited to occasional stooping, kneeling, crouching,

crawling and climbing stairs.   He should never climb ladders, ropes or scaffolds,

never work at unprotected heights or around dangerous machinery, and should only occasionally reach in all directions with his right arm.   The VE testified that this person could not do plaintiff's past work, but could do other jobs which exist in significant numbers, such as storage rental clerk, cleaner, and photocopy machine operator.   (Tr. 59-60).

**4.      Medical Treatment**

The treatment records consist of records from the emergency room and the records of Dr. Robert Davidson.

Mr. Hesse went to the emergency room several times in March, 2008, seeking Demerol for his back pain.   (Tr. 437-461).   On March 30, 2008, the emergency room doctor counseled him "regarding his addiction to prescription pain-killers and his need to find out his real pain problem." (Tr. 459).   In May, 2008, he presented with a "spinal" headache exacerbated by mowing grass.   (Tr. 470).   On August 4, 2008, he presented with sciatic pain after doing yard work and moving a dishwasher.   (Tr. 476).

Mr. Hesse's prior application was denied on August 7, 2008.

Dr. Davidson's records covering the period from January, 2006, through September, 2009, are located at Tr. 489-525.   His office notes contain very little in the way of objective findings.   They are comprised largely of plaintiff's subjective complaints of back pain and left leg pain, along with prescriptions for pain medications.   In September, 2007, Dr. Davidson completed a form report in connection with plaintiff's prior application for social security benefits. He

indicated that plaintiff was unable to flex his spine past 10 degrees and had no extension at all. (Tr. 494).

Mr. Hesse again went to the emergency room complaining of back pain and sciatica on September 28, 2009. He was out of his pain medication (Morphine) and was unable to get ahold of Dr. Davidson. On exam, he was ambulatory and in no distress. He had no leg weakness. The diagnosis was chronic back pain. He was administered Demerol and sent home with 3 Vicodin tablets. (Tr. 585-586).

Dr. Davidson's records document visits on October 30 and November 25, 2009. Plaintiff complained of low back pain and headache. No objective findings were noted except for his weight. (Tr. 550). In January and February, 2010, his back pain was the same. The doctor reviewed "paperwork for disability." (Tr. 549).

Dr. Davidson saw plaintiff in April, June, September and November, 2010. Mr. Hesse wanted different pain medication, but the doctor refused. (Tr. 597-598).

The last documented medical treatment was an office visit with Dr. Davidson on January 21, 2011. Plaintiff reported that his back was worse in the cold weather. He had pain in the low back and in the lumbar paraspinal muscles on the left side. (Tr. 597).

**5.** **Consultative Examination**

Dr. Adrian Feinerman performed a consultative physical exam on November 12, 2009. Mr. Hesse complained of low back pain radiating into his left leg. He

also complained of headaches.   On exam, there was no anatomic deformity of the cervical, thoracic or lumbar spine.   The lumbar range of motion was decreased. He lacked 30 degrees of flexion, 10 degrees of extension and 15 degrees of lateral flexion.   Ambulation was normal without an assistive device.   Straight leg raising was negative.   Muscle strength was normal throughout, and there was no muscle spasm or atrophy.   Fine and gross manipulation were normal.   Grip strength was strong and equal.   The range of motion of the right elbow was limited in supination and pronation.   Mr. Hesse was able to tandem walk, walk on heels and toes, squat and arise, hop, and arise from a chair with no difficulty.   Sensation was normal and he was neurologically intact.   (Tr. 526-534).

**6.   Dr. Davidson's Opinion**

On March 22, 2011, Dr. Davidson completed a form entitled Medical Source Statement of Ability to Do Work-Related Activities.   He opined that Mr. Hesse could stand/walk for less than 1 hour at a time and for 3 hours total a day.   The same limits applied to sitting.   He could never do postural activities such as stooping or balancing.   His ability to reach, handle, feel and push/pull were affected because "back instability prevents ... motions of reaching, pushing, pulling."   Dr. Donaldson also stated that plaintiff was on narcotics and muscle relaxers which impaired his alertness and coordination.   He stated that these limitations had been present since 2001.   (Tr. 603-606).

**Analysis**

Plaintiff first argues that the ALJ "made a clear error" in concluding that plaintiff did not have any medical treatment or take prescribed medication after January, 2011.   The ALJ's conclusion was based on the fact that the last record of treatment was a visit with Dr. Davidson on January 21, 2011.   See, Tr. 597.

Plaintiff does not argue that the ALJ overlooked records of later treatment. Rather, he bases his argument on his testimony at the second hearing, quoted above.

The Court must reject this point.   First, the testimony was equivocal.   Mr. Hesse first said that he had no additional treatment since the spring of 2011, but then claimed to have seen Dr. Davidson.   More importantly, plaintiff never submitted any additional records from Dr. Davidson.   Plaintiff had the responsibility to provide medical evidence showing that he has an impairment and the severity of that impairment.   **20 C.F.R. §416.912.**   As Mr. Hesse was represented by counsel, the ALJ was entitled to assume that he was presenting his "strongest case for benefits."   ***Buckhanon ex. rel J. H. v. Astrue***, **368 Fed. Appx. 674, 679 (7th Cir. 2010).**   Far from being a "clear error," the ALJ's conclusion that plaintiff had no medical treatment after January, 2011, was a permissible conclusion based on the record before him.[3]

Plaintiff next argues that the ALJ erred in giving substantial weight to Dr. Feinerman's opinion after having described it as boilerplate and inconsistent with

---

[3] The Court notes that plaintiff did not submit any additional medical records to the Appeals Council in support of his request for review.   See, Tr. 5.

the record at the second hearing.

Notably, plaintiff does not make a substantive argument as to why Dr. Feinerman's opinion was not entitled to significant weight.   Nor does he argue that the ALJ erred in discounting Dr. Davidson's opinion.   He simply suggests that he was sandbagged by the ALJ's comments.

It is true that, after counsel described Dr. Feinerman's report as boilerplate and inconsistent with the record, the ALJ said, "I also agree with you about your comment regarding our friend, Dr. Feinerman."   Plaintiff suggests that the ALJ's later statement that he would "just leave that be" indicated that he would not give much weight to Dr. Feinerman's report.   On the contrary, the ALJ made that remark in response to counsel's claim that he (counsel) knew "a lot" about Dr. Feinerman.   See, Tr. 51-52.   In context, it appears that the ALJ was attempting to foreclose a beyond-the-record discussion of what counsel "knew" about Dr. Feinerman, rather than offering an evaluation of the weight to be given to the doctor's opinion.

This Court reviews the final decision of the Commissioner made after a hearing, 42 U.S.C. §405(g), and not the remarks made by the ALJ at the hearing. Perhaps plaintiff's sandbagging argument might have some traction in a case where the ALJ definitively stated that he would discount a particular medical opinion at the hearing, but later reversed his position without notice to the claimant.   This is not, however, such a case.   The ALJ's remarks about Dr. Feinerman were opaque, at best.   Further, plaintiff does not point to any specific evidence which he would

have submitted but for the ALJ's remarks.    In view of the fact that plaintiff does not even attempt to demonstrate that Dr. Feinerman's opinion was not entitled to substantial weight, his point is rejected.

Mr. Hesse's third and fourth points can be swiftly disposed of.    He argues that the ALJ ignored his diagnoses of failed back syndrome and sciatica.    The ALJ did, however, find that he had degenerative disc disease of the lumbar spine, and discussed his complaint of radiating pain down his left leg.    Plaintiff completely omits any discussion of what the additional diagnoses of failed back syndrome and sciatica add to the picture.

For his fourth point, he argues that the ALJ erred in ignoring his request for a consultative orthopedic exam.    However, a social security claimant does not have a right to have a consultative exam by a specialist in the field of his choosing. Rather, the ALJ has the discretion to determine whether such an examination is warranted.    20 C.F.R. §416.912(f).    Here, the ALJ procured one consultative examination.    Plaintiff has not shown that it was an abuse of discretion to not procure a second examination.    See, ***Flener v. Barnhart***, **361 F.3d 442, 448 (7**[th] **Cir. 2004), citing *Luna v. Shalala*, 22 F.3d 687, 692 (7**[th] **Cir. 1994).**

Lastly, Mr. Hesse argues that the ALJ erred in considering his activities.    He argues that the ALJ should not have considered activities prior to the date of his current SSI application, and that he erroneously labeled some of his activities as being inconsistent with a limitation to sedentary exertion.

In his current application for SSI, Mr. Hesse claimed disability beginning on March 30, 2002.   See, Tr. 282.    He submitted a Disability Report stating that he had been unable to work since that date.   Tr. 319.    His onset date was amended to a later date only because the denial of his prior claim stood as an administrative determination that he was not disabled as of the date of that decision.   ***Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).**   However, evidence submitted on the prior application can be considered if it is relevant to the determination of the subsequent application.   ***Ibid.; Groves v. Apfel,* 148 F.3d 809, 810 (7th Cir. 1998).**

The ALJ is directed to consider the claimant's activities in the course of his credibility determination.   SSR 96-7p.   The fact that Mr. Hesse was involved in a physical altercation after drinking, rode a motorcycle, and did yard work and welding during a period when he claimed to be unable to do even sedentary work was relevant to the ALJ's credibility determination, even though those activities occurred before the denial of his prior application.   ALJ Hafer considered this evidence as inconsistent statements bearing on plaintiff's credibility and not as substantive evidence of his functional capacity at the time of his decision.   It was not error for him to do so.

ALJ Hafer also considered plaintiff's activities since the date of his present application.   He noted that Mr. Hesse did household chores and tried to use a riding mower.   At the time of the second hearing, he was cooking for an elderly

friend, although he previously claimed he was unable to stand long enough to prepare a meal.   Notably, the ALJ did not equate these activities with an ability to sustain full-time work.   Rather, he properly considered the conflict between the apparent ability to do such things and plaintiff's claims about the extent of his physical limitations.   *Pepper v. Colvin*, **712 F.3d 351, 368 (7th Cir. 2013).**

Plaintiff has not attacked the credibility determination on any other basis. As the ALJ's credibility determination is not "patently wrong," it will not be overturned.   *Simila v. Astrue*, **573 F.3d 503, 517 (7th Cir. 2009).**

In sum, none of plaintiff's arguments are persuasive.   Even if reasonable minds could differ as to whether Mr. Hesse is disabled, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence.   *Shideler v. Astrue*, **688 F.3d 306, 310 (7th Cir. 2012);** *Elder v. Astrue*, **529 F.3d 408, 413 (7th Cir. 2008).**

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Hafer committed no errors of law, and that his findings are supported by substantial evidence.   Accordingly, the final decision of the Commissioner of Social Security denying Steven Hesse's application for disability benefits is **AFFIRMED.**

The clerk of court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**

Page **17** of **18**

DATE:   April 23, 2014.

s/ Clifford J. Proud
CLIFFORD J. PROUD
UNITED STATES MAGISTRATE JUDGE